IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**RONALD SMART**
**d/b/a PASCHALL ELECTRIC,**

    **Plaintiff,**

**v.**

**INTERNATIONAL BROTHERHOOD**
**OF ELECTRICAL WORKERS,**
**LOCAL 702, and CHRISTOPHER N. GRANT,**
**and SCHUCHAT, COOK, & WERNER,**

    **Defendants.**        Case No. 07-cv-94-DRH

## MEMORANDUM & ORDER

**HERNDON, Chief Judge:**

### I. INTRODUCTION & BACKGROUND

Before the Court are two separate Motions to Dismiss: one filed by defendants Christopher Grant and Schuchat, Cook & Werner ("Schuchat"), the other filed by defendant International Brotherhood of Electrical Workers, Local 702 ("IBEW 702") (Docs. 13 & 15, respectively). Plaintiff Ronald Smart d/b/a Paschall Electric ("Smart" or "Paschall Electric") has filed a single Response (Doc. 19), addressing both Motions. Plaintiff brings a three-count Complaint (Doc. 1): Count I against IBEW 702 for violation of the Illinois Antitrust Act, **740 ILL. COMP. STAT. 10/2**; Count II against all Defendants for unwarranted prosecution; and Count III against defendants Grant and Schuchat, Cook & Werner for legal malpractice.

Because the Court finds Defendants' grounds for dismissal to be meritorious, it will grant the Motions for reasons discussed in this Order.

## II. FACTUAL BACKGROUND

Plaintiff, operating as a sole proprietor, does business as Paschall Electric (Doc. 1, ¶ 1). Plaintiff alleges that on or about January 20, 2003, he submitted a proposal to do electrical work for John Stoecklin, at his place of business known as "Extreme Sports," located in Marion, Illinois (*Id*. at ¶¶ 6-7). Barnett Electric submitted a bid for the same job, estimating its costs at approximately $4,500.00 more than Plaintiff's (*Id*. at ¶ 9). Stoecklin accepted Plaintiff's bid (*Id*. at ¶ 8). Plaintiff further alleges that defendant IBEW 702 contacted Stoecklin and told him they would shut down the project if he used Plaintiff, a non union electrician, rather than a union electrician (*Id*. at ¶ 10). Additionally, Plaintiff alleges that IBEW 702 told Stoecklin that Ameren CIPS would not provide power hook up to his place of business if he continued to use Plaintiff (*Id*. at ¶ 11). Thus, Plaintiff complains that due to IBEW 702's alleged threats and coercion, Plaintiff lost the bid job and Stoecklin thereafter hired Barnett Electric to do the job instead (although Barnett was only paid the amount of Plaintiff's bid) (*Id*. at ¶¶ 11-14).

Several years earlier, in July 1998, Plaintiff executed a Letter of Assent, which authorized the Southern Division, Illinois Chapter of the National Electrical Contractor's Association ("NECA") to act as Plaintiff's collective bargaining representative (Doc. 1, Ex. D), thereby agreeing to comply with and be bound by all of the provisions of the current and subsequent approved labor agreements between

NECA and IBEW 702. Plaintiff allegedly withdrew his membership with the Union (NECA and IBEW 702), in accordance with the Letter of Assent (Doc. 1, ¶ 17, Ex. D). Plaintiff wrote two letters to NECA, one dated March 1, 1999, and the other dated March 9, 1999, informing the Union of his intent to terminate his agreement with NECA and IBEW 702 and to withdraw his pension monies, as did his only employee, Robert D. Thompson (*Id*. at ¶¶ 17-18, Exs. E & G). Additionally, Plaintiff cancelled his membership to NECA (*Id*. at ¶ 19). Apparently, Plaintiff believes he properly complied with the membership termination procedure. However, Defendants state in their Motions that although Plaintiff ceased to pay the fringe benefit contributions after giving his membership termination notice, IBEW 702 informed Plaintiff that "he could not unilaterally cancel the agreement" (Doc. 14, p. 2; *see also* Doc. 1, Ex. J). Defendant Grant, an attorney employed by Schuchat, wrote a letter, dated March 6, 2003, to Timothy Akbar of the Equal Employment Opportunity Commission ("EEOC"), in response to a charge Plaintiff filed with the EEOC against IBEW 702 (Doc. 1, Ex. J). Grant explained that although Plaintiff believed he could terminate his membership contract with NECA at any time, the current contract did not expire until August 31, 2002 (*Id*.). Grant further stated in the letter that Plaintiff "gave up his membership in the Union in 1999" (*Id*.).

In fact, IBEW 702 had previously filed a grievance against Plaintiff seeking remedy for Plaintiff's alleged breach of the collective bargaining agreements, for his failure to pay working dues and fringe benefit contributions after March 1999. Plaintiff was found guilty of not paying fringe benefits by the Joint Labor Management

Grievance Committee and an award was issued in IBEW 702's favor on September 2, 1999 (*Id.*). According to Defendants, this decision is what prompted Plaintiff to file a charge with the EEOC (*Id.*). His EEOC charge was followed by a federal lawsuit against IBEW 702, stating a claim of race discrimination under Title VII and Section 1981 and also seeking to set aside the arbitration award (*Id.*). *See Smart v. Internat'l Brotherhood of Electrical Workers, Local 702*, Case No. 99-cv-956-DRH (S.D. Ill.) (Doc. 48). IBEW 702 counterclaimed to enforce the arbitration award. Summary judgment was granted in favor of IBEW 702; this decision was affirmed by the Seventh Circuit on appeal. ***See Smart v. Internat'l Brotherhood of Electrical Workers, Local 702, 315 F.3d 721 (7th Cir. 2002)***.

IBEW 702 and various IBEW-NECA benefit funds filed suit in federal court to collect Plaintiff's unpaid benefits. *See Roan v. Smart*, Case No. 03-cv-4065-DRH. Ultimately, a partial default judgment was entered against Plaintiff as he failed to file an answer or other responsive pleading (Case No. 03-4065, Docs. 16 & 17). Although Plaintiff subsequently filed a Rule 55(c) Motion for Relief from Default Judgment and a further Rule 60(b) Motion to Set Aside Judgment, the Court denied both motions, finding no evidence of good cause to vacate the default (Case No. 03-4065, Docs. 15 & 28). On April 26, 2004, the Court granted IBEW 702 a full default judgment against Plaintiff for unpaid benefit contributions, interest, attorneys' fees and costs (Case No. 03-4065, Doc. 31). Thereafter, on May 14, 2004, Plaintiff filed for Chapter 13 bankruptcy. *See In re Smart*, Case No. 04-bk-41142 (S.D. Ill.).

### III. **DISCUSSION**

Although there are two separate Rule 12(b)(6) Motions to Dismiss, the Court will address them together in a single Order, as many of the issues are similar. In their Motion, defendants Grant and Schuchat, Cook & Werner ("Schuchat") move for dismissal of Plaintiff's claims against them, arguing that his claims for unwarranted prosecution and legal malpractice fail as a matter of law and also that he is barred by the doctrine of judicial estoppel from bringing suit for failure to list his causes of action as assets in his bankruptcy petition (Doc. 14). Defendant IBEW 702 moves for dismissal of Plaintiff's claims against it, arguing that Plaintiff's claims for violation of the Illinois State Antitrust Act and unwarranted prosecution are completely preempted by the National Labor Relations Act ("NLRA") (Doc. 16). Further, IBEW 702 also argues Plaintiff's claim of unwarranted prosecution fails as a matter of law and is barred by the doctrine of judicial estoppel (*Id.*).

**A.   Motion to Dismiss**

Previously, when ruling on a motion to dismiss for failure to state a claim pursuant to **Rule 12(b)(6)**, the district court assumed as true all facts well-pled plus the reasonable inferences therefrom and construes them in the light most favorable to the plaintiff. ***Fries v. Helsper*, 146 F.3d 452, 457 (7th Cir. 1998) *Dist. 207*, 29 F.3d 1149, 1151 (7th Cir. 1994))**. The question was whether, under those assumptions, the plaintiff would have a right to legal relief. *Id*. This standard was articulated as such:

> [U]nder "simplified notice pleading," . . . the allegations of the complaint should be liberally construed, and the "complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

***Lewis v. Local Union No. 100 of Laborers' Int'l Union*, 750 F.2d 1368, 1373 (7th Cir. 1984)(quoting *Conley v. Gibson*, 355 U.S. 41, 46-47 (1957))**.

Earlier this year, the Seventh Circuit reiterated this liberal standard governing notice pleading:

> Rule 8 was adopted in 1938, and *Conley v. Gibson*, 355 U.S. 41, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957), stressed that it does not require fact pleading. It is disappointing to see a federal district judge dismiss a complaint for failure to adhere to a fact-pleading model that federal practice abrogated almost 70 years ago. As citations in the preceding paragraphs show, however, this is among many similar dispositions that the Supreme Court and this court have encountered recently and been obliged to reverse.

***Vincent v. City Colleges of Chicago*, 485 F.3d 919, 924 (7th Cir. 2007)(footnote omitted); *see also Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84*, 133 F.3d 1054, 1057 (7th Cir. 1998); *Kaplan v. Shure Brothers, Inc.*, 153 F.3d 413, 419 (7th Cir. 1998)**.

However, in a subsequent opinion issued on May 21, 2007, the Supreme Court determined that ***Conley's*** famous "no set of facts" phrase "ha[d] earned its retirement." ***Bell Atlantic Corp. v. Twombly*, ___ U.S. ___, 127 S. Ct. 1955, 1969 (May 21, 2007)**. According to the Supreme Court, the threshold pleading requirement of **FEDERAL RULE OF CIVIL PROCEDURE 8** requires a complaint allege "enough facts to state a claim to relief that is *plausible* on its face" in order to survive a **Rule 12(b)(6)** Motion to Dismiss for failure to state a claim for which relief can be granted. ***Id*. at 974 (clarifying that a "heightened fact pleading of specifics" is**

**not required)(emphasis added)**. In other words, the Supreme Court explained it was "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'" by providing "more than labels and conclusions," because "a formulaic recitation of the elements of a cause of action will not do . . . ." ***Id.* at 1964-65 (alteration in original)(quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986))**. The plaintiff must plead factual allegations which show the right to relief exists beyond mere speculation by "rais[ing] a *reasonable expectation* that discovery will reveal evidence" to substantiate the plaintiff's claims. ***Id.* at 1965**. Thus, the Seventh Circuit has interpreted ***Bell*** as imposing a two-tiered requirement for a complaint to survive a Rule 12(b)(6) motion: (1) it "must describe the claim in sufficient detail to give the defendant 'fair notice of what the . . . claim is and the grounds upon which it rests,'" and (2) the "allegations must plausibly suggest that the plaintiff has a right to relief, raising the possibility above a 'speculative level.'" ***E.E.O.C. v. Concentra Health Serv., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)(citing *Bell*, ___ U.S. ___, 127 S. Ct. at 1964-65, 1973 n.14)**.

B.   **Analysis**

1.   **Failure to State a Claim**

Plaintiff states a claim of legal malpractice against defendants Grant and Schuchat for their involvement in attempting to "bind" Plaintiff to the union contract in order to collect benefit contribution funds, even though Plaintiff believes his membership was properly terminated and no funds were owed. Plaintiff alleges

Defendants lied and otherwise acted unethically in their efforts to pursue Plaintiff within the legal system. Illinois law requires the following elements to properly establish a claim of legal malpractice: (1) an attorney-client relationship that establishes a duty on the part of the attorney; (2) a negligent act or breach of that duty; (3) proximate cause establishing that but for the attorney's breach, the plaintiff would have prevailed in the underlying action; and (4) damages. ***Hefferman v. Bass*, 467 F.3d 596, 600 (7th Cir. 2006)(citing *Webb v. Damisch*, 842 N.E.2d 140, 146 (Ill. 2005))**. Even though federal pleading requirements are not fact-based, a plaintiff can plead himself out of a claim, which is what has happened in this case. Clearly, a legal malpractice claim can only be brought by a plaintiff against his former attorney, not against an attorney or law firm that has never represented the plaintiff – hence, the requirement that there be an attorney-client relationship. It is evident from the pleadings that defendants Grant and Schuchat never served as representative counsel for Plaintiff. Rather, they served as representative counsel for the party opposing Plaintiff. Thus, his claim for legal malpractice against them must fail as a matter of law and will be dismissed with prejudice.

Plaintiff also states a claim for unwarranted prosecution against all Defendants for their involvement in the various legal proceedings against Plaintiff to collect unpaid benefit funds. Technically, Plaintiff brings a claim for *malicious* prosecution against Defendants. Under Illinois law, a claim for malicious prosecution requires the Plaintiff to show: 1) the commencement or continuance of

a criminal or civil judicial proceeding by the defendant, 2) a termination of that proceeding in favor of the plaintiff, 3) the absence of probable cause for the proceeding, 4) the presence of malice, and 5) damages to the plaintiff resulting from the commencement or continuance of that proceeding. **Allen v. Berger, 784 N.E.2d 367, 369 (Ill. App. Ct. 2002)(citing *Swick v. Liautuad,* 662 N.E.2d 1238, 1242 (1996))**. As Defendants correctly point out, Plaintiff has failed to show that any of the legal proceedings initiated by Defendants against him were terminated in his favor. Conversely, they were all terminated in Defendants' favor. Even though the proceedings were not plead in detail, Defendants have noted several federal suits and their outcomes, as described previously in this Order. The Court takes judicial notice of these cases and their outcomes as a matter of public record. **See *Henson v. CSC Credit Serv.*, 29 F.3d 280, 284 (7th Cir. 1994)("'[T]he district court may also take judicial notice of matters of public record' without converting a 12(b)(6) motion into a motion for summary judgment.")(internal citation omitted)**. Moreover, in his Response, Plaintiff has failed to argue that the legal proceedings Defendants discuss in their Motion were not the basis of his unwarranted prosecution claim; he has failed to oppose the notion that the outcomes of these proceedings were not terminated in his favor. Therefore, the Court also finds Plaintiff's claim of unwarranted (malicious) prosecution against all Defendants also fails as a matter of law and must be dismissed with prejudice.

## 2. Judicial Estoppel

Although this doctrine may be applicable to Plaintiff's claims of legal malpractice and unwarranted prosecution, as the Court has already determined that Plaintiff has failed to plead these claims as a matter of law, its analysis will not reach this issue.

## 3. Preemption

Plaintiff states a claim against IBEW 702 for violation of the Illinois Antitrust Act (the "Act"), for its alleged threatening and coercive behavior towards Plaintiff's client in attempts to make the client hire a union electrician instead of Plaintiff. **740 ILL. COMP. STAT. 10/1-10/12**.[1] IBEW 702 argues that this state statutory claim is preempted, because its alleged conduct can best be construed as "unfair labor practice" by a labor organization, which is arguably prohibited by § 8(b)(4) of the NLRA. **28 U.S.C. § 158(b)(4)(ii)(B)**.

The Supreme Court has developed a preemption doctrine, known as *Garmon* preemption, regarding the NLRA, which "forbids state and local regulation of activities that the NLRA protects or prohibits or arguably protects or prohibits." ***Cannon v. Edgar*, 33 F.3d 880, 884 (7th Cir. 1994)(citing *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 244-45 (1959))**. In *Garmon*, the Supreme Court held:

---

[1] While Plaintiff cites section 2 in his Complaint, the Court a violation of the Act would actually be brought pursuant to section 3, dealing specifically with violations of the Act.

> When it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by § 7 of the National Labor Relations Act, or constitute an unfair labor practice under § 8, due regard for the federal enactment requires that state jurisdiction must yield. To leave the States free to regulate conduct so plainly within the central aim of federal regulation involves too great a danger of conflict between power asserted by Congress and requirements imposed by state law. Nor has it mattered whether the States have acted through laws of broad general application rather than laws specifically directed towards the governance of industrial relations. Regardless of the mode adopted, to allow the States to control conduct which is the subject of national regulation would create potential frustration of national purposes.

***Garmon*, 359 U.S. at 244**.

However, a state claim will not be preempted if the regulated activity "is (1) merely of peripheral concern to the federal labor laws or (2) touches interests deeply rooted in local feeling and responsibility." ***Cannon*, 33 F.3d at 884 (citing *Belknap, Inc. v. Hale*, 463 U.S. 491, 498 (1983))**.

As stated, Plaintiff's claim is for violation of the Illinois Antitrust Act. Section 3 of the Act enumerates violations. From reviewing the statutory language, it appears the allegations of IBEW 702's actions are best categorized under subsection (3) of this statute, which states as follows:

> § 3. Every person shall be deemed to have committed a violation of this Act who shall:
> ***
> (3) Establish, maintain, use, or attempt to acquire monopoly power over any substantial part of trade or commerce of this State for the purpose of excluding competition or of controlling, fixing, or maintaining prices in such trade or commerce.

**740 Ill. Comp. Stat. 10/3(3)**.

IBEW 702 suggests its alleged conduct fits within § 8(b)(4)(ii)(B) of the NLRA, which states:

> (b) Unfair labor practices by labor organization
>
> It shall be an unfair labor practice for a labor organization or its agents--
>
> ***
>
> (4) . . . (ii) to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is–
>
> ***
>
> (B) forcing or requiring any person to cease using, selling, handling, transporting, or otherwise dealing in the products of any other producer, processor, or manufacturer, or to cease doing business with any other person, or forcing or requiring any other employer to recognize or bargain with a labor organization as the representative of his employees unless such labor organization has been certified as the representative of such employees under the provisions of section 159 of this title: *Provided*, that nothing contained in this clause (B) shall be construed to make unlawful, where not otherwise unlawful, any primary strike or primary picketing.

**28 U.S.C. §158(b)(4)(ii)(B)**.

Both state and federal law serve to prohibit the wrongful restraint of trade or elimination of competing business interests. Clearly, Plaintiff's allegations that IBEW 702 acted with intent to ensure that Mr. Stoecklin went with a Union electrician instead of hiring Plaintiff are arguably within the ambit of § 8(b) of the NLRA. Therefore, the Court must next ask whether such regulated activity "is merely a peripheral concern of the labor laws or if the conduct touches interests so deeply

rooted in local feeling that preemption cannot merely be inferred." ***Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 660-61 (7th Cir. 1992)(citing *Garmon*, 359 U.S. at 243-44)**. The Court finds IBEW 702's alleged actions do not amount to a mere peripheral concern to federal labor laws – if a union is coercing business owners and other employers into hiring only union members, this strikes at the heart of the NLRA, as "[o]ne of Congress' primary aims in prohibiting certain secondary boycotts[2] was 'shielding . . . unoffending employers and others from pressures in controversies not their own.'" ***George v. Nat'l Ass'n of Letter Carriers*, 185 F.3d 380, 383 (5th Cir. 1999)(citing *Edward J. DeBartolo Corp. v. N.L.R.B.*, 463 U.S. 147 (1983)(quoting *NLRB v. Denver Bldg. and Construction Trades Council*, 341 U.S. 675 (1951)(internal citations omitted))**. Thus, while a claim for violations of the Illinois Antitrust Act may touch upon deep rooted local feelings, it is clear that the NLRB has preemptive jurisdiction in secondary boycott claims based on union activities. Thus, Plaintiff's claim for violation of the Illinois Antitrust Act is dismissed with prejudice as the Court finds it is preempted by the NLRA.

---

[2] A secondary boycott "generally involves a labor union's exertion of pressure on a neutral employer with whom the union has no dispute, in order to force that neutral employer to stop dealing with the primary employer with whom the union does have a labor dispute." ***George v. Nat'l Ass'n of Letter Carriers*, 185 F.3d 380, 383 (5th Cir. 1999)(citing 2 The Developing Labor Law 1211 (Patrick Hardin et al., 3d ed. 1992))**. Not all types of secondary boycotts are prohibited, but boycotts using threatening, coercive or restraining behavior are not permitted under § 8(b)(4) of the NLRA.

### III.  CONCLUSION

Defendant Grant and Schuchat's Motion to Dismiss (Doc. 13) and defendant IBEW 702's Motion to Dismiss (Docs. 15) are hereby **GRANTED**.  All of Plaintiff's claims against all Defendants are hereby **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

Signed this 3rd day of December, 2007.

/s/     David R Herndon

**Chief Judge**
**United States District Court**