# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

**RONALD SMART d/b/a**
**PASCHALL ELECTRIC,**

**Plaintiff,**

**v.**

**INTERNATIONAL BROTHERHOOD**
**OF ELECTRICAL WORKERS,**
**LOCAL 702,**

**Defendant.**                                                            No. 07 - CV - 00094 DRH

## MEMORANDUM & ORDER

**HERNDON, Chief Judge:**

### I. Introduction

Now before the Court is defendant International Brotherhood of Electrical Workers, Local 702's motion for summary judgment (Doc. 64), to which plaintiff Ronald Smart d/b/a Paschall Electric has timely responded (Doc. 68). Defendant also replies to address new allegations in plaintiff's response (Doc. 69). Plaintiff's motion for summary judgment is also before the Court (Doc. 70), and defendant likewise has timely responded (Doc. 71). The Court previously granted defendant's partial motion to dismiss plaintiff's second amended complaint, except as to plaintiff's section 303

claim for secondary boycotting under the National Labor Relations Act, 29 U.S.C. § 187 (Doc. 57). Now defendant moves for summary judgment as to the remaining claim. Defendant argues that plaintiff fails to show he suffered any damages under § 187(b) as a result of defendant's conduct, and since damages are an essential element of plaintiff's claim, defendant is entitled to judgment as a matter of law. Plaintiff responds that he should not have to show damages with absolute precision, and he offers several new estimates of his damages.

Based upon the reasoning below, the Court finds that defendant is entitled to summary judgment as to plaintiff's claim. Accordingly, defendant's motion for summary judgment is **GRANTED**, and plaintiff's case is hereby **DISMISSED WITH PREJUDICE**. Plaintiff's motion for summary judgment is terminated as moot.

## II. Background

Plaintiff Ronald Smart is an electrical contractor and was hired by John Stoecklin in January 2003 to perform electrical work for Stoecklin's company Extreme Sports, LLC (Pl.'s Dep. 32, Aug. 17, 2007). Plaintiff provided Stoecklin a proposal to do the work for $7,575 (Def.'s Ex. 1), Stoecklin accepted, and plaintiff worked on the job for a little over a week (Pl.'s Dep. 35). At that point one of defendant's representatives contacted Stoecklin and told him he needed to hire a union contractor or defendant would shut down the project (Pl.'s Dep. 35–37; Stoecklin Aff. 1, May 16, 2010). Stoecklin complied, dismissing plaintiff and giving

the project to a member of defendant's union (Pl.'s Dep. 37). Stoecklin says the "whole scenario occurred within a couple of days . . ." (Stoecklin Aff. 2). "Completion of the job by all contractors was contingent upon the electrical work being done first," so the union contractor "came in and completed the job" (*id.*). Plaintiff presented Stoecklin with an invoice for $892.72 for work he had performed up to that point, including materials, and Stoecklin paid him (Pl.'s Dep. 38–39; Def.'s Ex. 3).

In plaintiff's deposition, he says he does not know how much of the original $7,575 would have been profit (Pl.'s Dep. 65). He explained that he does not know how much profit margin he typically builds into his jobs (Pl.'s Dep. 65–66). Some jobs did not earn any profit (Pl.'s Dep. 69:13–15). Further, he admits he may have submitted his proposal to Stoecklin "at no profit just to be busy" (Pl.'s Dep. 105:1–10). Plaintiff testified he did not know whether the Extreme Sports project would have yielded no profit, 10%, or 20% (Pl.'s Dep. 71). Defendant asked if anything could refresh plaintiff's memory: "I don't want down the line you to come up with a number at a hearing in this case. I want to know now if there's any way I can refresh your memory, anything you can go back home and get that will tell you whether there was any profit in this job . . . ," to which plaintiff replied, "Not that I recall" (Pl.'s Dep. 71:17–72:1).

Plaintiff refutes the above statements in his response brief. He says he had a long drive before the deposition and that defendants asked him about "several invoices and about several projects" (Doc. 68, p. 3). After the deposition, he says he looked more closely at the Extreme Sports project and found that the invoice he

submitted to Stoecklin shows his profit was $38.50 per hour (Doc. 68, p. 3). He arrives at that figure by subtracting a $16.50-per-hour labor cost from the $55-per-hour labor charge on the invoice (Doc. 68, p. 3; Def.'s Ex. 3). Thus for 12 hours of work at $38.50 per hour, plaintiff concludes he earned $462 in profit (Doc. 68, p. 3). Moreover, plaintiff says that he had materials left over from previous projects, which he had obtained for free or below cost, and this would have increased his profit (Doc. 68, p. 4).

Plaintiff adds that there would have been at least a $4,500 profit on the Extreme Sports job because that was the difference between his bid and another contractor's bid (Doc. 68, p. 3, citing Stoecklin Aff. 2). "Probably more than that," he says, because he did work beyond what was in his bid, and Stoecklin had additional electrical work done by other contractors (Doc. 68, pp. 2–3). Plaintiff states that defendant influenced other prospective clients not to hire him, too, even though they liked plaintiff's bids (Doc. 68, p. 3).

### III. Discussion

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 938 (7th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Therefore summary judgment is appropriate against a party who cannot

make a showing sufficient to establish an essential element of a claim on which the party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322. When cross-motions for summary judgment are filed, courts look to the burden of proof that each party would bear on an issue at trial and require that party to go beyond the pleadings and affirmatively establish a genuine issue of material fact. *Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997) (citing *Celotex*, 477 U.S. at 324); *see also Walker v. Shansky*, 28 F.3d 666, 670–71 (7th Cir. 1994) (nonmovant must show "through specific evidence" that an issue of fact remains on issues for which he bears the burden of proof at trial).

Courts must construe all facts in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *Regensburger v. China Adoption Consultants, Ltd.*, 138 F.3d 1201, 1205 (7th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). The same is true with cross-motions. Courts should "'construe all inferences in favor of the party against whom the motion under consideration is made.'" *Metro. Life Ins. Co. v. Johnson*, 297 F.3d 558, 561–62 (7th Cir. 2002) (quoting *Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685, 692 (7th Cir. 1998)). Courts do not weigh the evidence, but only determine whether a genuine issue remains for trial. *See Lewis v. City of Chicago*, 496 F.3d 645, 651 (7th Cir. 2007).

No issue remains for trial "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted."

*Anderson*, 477 U.S. at 249–50 (citations omitted); *accord Starzenski v. City of Elkhart*, 87 F.3d 872, 880 (7th Cir. 1996). "[I]nferences relying on mere speculation or conjecture will not suffice." *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 407 (7th Cir. 2009) (citation omitted). Instead, the nonmoving party must present "'definite, competent evidence to rebut the motion.'" *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000) (quoting *Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997)). "[U]ncorroborated testimony is insufficient to defeat a motion for summary judgment." *Weeks v. Samsung Heavy Indus. Co., Ltd.*, 126 F.3d 926, 939 (7th Cir. 1997).

## IV. <u>Analysis</u>

### A. Compensatory Damages

Defendant contends that plaintiff has failed to show specific evidence of damages, an essential element of his claim under 29 U.S.C. § 187. It is also plaintiff's burden on this motion to establish a genuine issue of fact as to damages.

Section 187(b) of Chapter 29 of the U.S. Code states:

> Whoever shall be injured in his business or property by reason or [*sic*] any violation of subsection (a) of this section may sue therefor in any district court of the United States subject to the limitations and provisions of section 185 of this title without respect to the amount in controversy, or in any other court having jurisdiction of the parties, and *shall recover the damages by him sustained and the cost of the suit*.

(emphasis added). Thus an element of a secondary-boycott claim is damages.

*Limbach Co. v. Sheet Metal Workers Int'l Ass'n*, 949 F.2d 1211, 1235 (3d Cir. 1991), *aff'd on reh'g*, 949 F.2d 1241 (3d Cir. 1991). The Supreme Court has compared violation of § 187 with tortious conduct, which further supports the conclusion that a showing of damages is required. *United Constr. Workers, Affiliated with United Mine Workers of Am. v. Laburnum*, 347 U.S. 656, 665–66 (1954) (section 187(b) authorizes recovery of damages in federal court for tortious conduct related to secondary boycotts).

Damages must be actual, compensatory damages. *See Local 20, Teamsters, Chauffeurs and Helpers Union v. Morton*, 377 U.S. 252, 260–61 (1964); *Pickens-Bond Constr. Co. v. Carpenters Local 690*, 586 F.2d 1234, 1242 (8th Cir. 1978). That is, damages must not be speculative. As the Court stated in its previous order, any claimed damages, including lost profits from future jobs, will not be allowed absent concrete evidence demonstrating that additional bids plaintiff obtained were lost as a proximate result of defendant's conduct (Doc. 57, p. 16).

Plaintiff is unable to show any actual damages based on definite, competent evidence. Even though plaintiff says the Extreme Sports project developed into more work, Stoecklin paid him for all his labor and materials on that project. As to the remainder of the project, plaintiff conceded he did not know how much of the original bid of $7,575 would have been profit. He did not know whether it would have yielded no profit, 10%, or 20%. Nor could he say how much profit he typically built into his jobs. Some did not bring any profit. Plaintiff admits that he may have submitted his bid to Stoecklin "at no profit just to be busy." Consequently, plaintiff has not shown

any evidence of damages.

Plaintiff is correct that when the fact of damage is shown, he does not have to prove the damages with absolute precision. *George E. Hoffman & Sons, Inc. v. Int'l Bhd. of Teamsters, Local No. 627*, 617 F.2d 1234, 1247 (7th Cir.1980); *Sheet Metal Workers Local 223 v. Atlas Sheet Metal Co.*, 384 F.2d 101, 109 (5th Cir.1967) ("While the employer must prove that he has sustained some injury to his business or property, he need not detail the exact amount of damages suffered. It is sufficient if the evidence supports a just and reasonable approximation.") (citing *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555 (1931)). But plaintiff has not shown the fact, or even a just and reasonable approximation, of damages. He estimates he would have made at least $4,500 profit on the Extreme Sports because that was the difference between his bid and another contractor's bid. The difference in the bids was Stoecklin's savings, though, not plaintiff's profit.

Plaintiff refutes the above statements in his response brief (Doc. 68). His new facts, however, are not based on competent evidence, contradict his deposition testimony, and are otherwise not sufficient to avoid a directed verdict at trial.

**B. Competent Evidence**

Defendant argues that certain of plaintiff's claims, such as his $38.50-per-hour profit and that he had materials left over from previous projects, are not supported by sworn testimony or affidavit as required by FEDERAL RULE OF CIVIL PROCEDURE 56 (Doc. 69, p. 5).

In ruling on a motion for summary judgment, courts can only consider evidence that would be admissible at trial. *Woods v. City of Chicago*, 234 F.3d 979, 988 (7th Cir.2000); *see also* FED. R. CIV. P. 56(c)(4). Under RULE 56(c)(1), a party asserting a fact must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials; . . . ." FED. R. CIV. P. 56(C)(1). To be admissible, testimony must be sworn, for example, in an affidavit or in a deposition; if it is not, courts may disregard it. *Pfeil v. Rogers*, 757 F.2d 850, 859 (7th Cir.1985).

Plaintiff claims that Stoecklin and other prospective clients had additional work for him, but these are unsworn assertions in his brief. The only concrete evidence offered, Stoecklin's affidavit, says "completion of the job by all contractors was contingent upon the electrical work being done first" (Stoecklin Aff. 2). So the union contractor "came in and completed the job," and the "whole scenario occurred within a couple of days . . ." (*id.*). He says nothing of additional work. Plaintiff also claims his labor cost was $16.50 per hour and that he had materials left over from previous projects. These are not offered in sworn testimony, however. As such, the Court may disregard them.

**C. Contradictions with Plaintiff's Deposition**

Even if plaintiff's claims were made in a sworn affidavit instead of his response brief, however, an affidavit offered to contradict the affiant's deposition is "entitled to

zero weight in summary judgment proceedings unless the affiant gives a plausible explanation for the discrepancy." *Beckel v. Wal-Mart Associates, Inc.*, 301 F.3d 621, 623 (7th Cir. 2002); *Miller v. A.H. Robins Co., Inc.*, 766 F.2d 1102, 1104 (7th Cir. 1985); *Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795, 806–07 (1999); *see also Patterson v. Indiana Newspapers, Inc.*, 589 F.3d 357, 365 (7th Cir. 2009). The explanation "must be sufficient to warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff's good-faith belief in, the earlier statement," the latter statement is still plausible. *See Cleveland*, 526 U.S. at 807. The explanation could preclude summary judgment if the affiant was confused at the deposition and is able to explain that in the affidavit, or if the affiant "lacked access to material facts and the affidavit sets forth the newly-discovered evidence." *Miller*, 766 F.2d 1102, 1104.

In his deposition testimony, plaintiff made numerous statements that he did not know what his expected profit on the Extreme Sports project would have been. He also could not think of anything that would refresh his memory. Defendant pointedly asked: "I don't want down the line you to come up with a number at a hearing in this case. I want to know now if there's any way I can refresh your memory, anything you can go back home and get that will tell you whether there was any profit in this job . . . ," to which plaintiff replied, "Not that I recall."

Now in his response brief, plaintiff understands the effect of his sworn testimony and attempts to impeach himself. He suggests he was confused during the deposition because he had a long drive and defendants asked him about several

invoices and projects. Having looked more closely at the Extreme Sports project since his deposition, he finds that the invoice he submitted to Stoecklin shows his profit was $38.50 per hour. Plaintiff adds that he had materials left over from previous projects. He did work beyond what was in his bid, and defendant caused other prospective clients not to hire him.

The Court finds that plaintiff has not explained the discrepancies between his deposition testimony and his response. A long drive and being asked about other projects is not persuasive, particularly given the new-found specificity in plaintiff's response. He doesn't explain how he calculated his $16.50-per-hour labor rate or why he did not remember it at the deposition when he was asked how much profit he typically built into jobs. He also does not explain his later recollection that he used left-over materials. To prevent summary judgment, plaintiff's explanations must be sufficient to warrant a reasonable juror's concluding that, assuming plaintiff's good-faith belief in his earlier statements, the latter statements are plausible. Plaintiff appeared certain at the deposition that he did not know what his profit on the Extreme Sports project would have been. Such statements cannot be reconciled with his many new estimates. Moreover, plaintiff has neither shown that he lacked access to material facts nor set forth newly discovered evidence. The invoice used to calculate his labor rate and the fact that he used left-over materials were available during the deposition.

**D. Directed Verdict**

As a final matter, if this case were permitted to get past summary judgment, the Court believes it would be required to grant a directed verdict for defendant, even if plaintiff testified under oath to everything he states now in his response brief. The Court could not allow a jury to engage in speculation regarding plaintiff's damages.

As the Supreme Court explained in *Anderson v. Liberty Lobby*, the standard for summary judgment mirrors that for a directed verdict under RULE 50(a). 477 U.S. at 250; *see also United States v. Thouvenot, Wade & Moerschen, Inc.*, 596 F.3d 378, 382 (7th Cir. 2010); *Boyd v. Wexler*, 275 F.3d 642, 647 (7th Cir. 2001). The trial judge must grant a directed verdict if "there can be but one reasonable conclusion as to the verdict." *Anderson*, 477 U.S. at 251 (citing *Brady v. Southern R. Co.*, 320 U.S. 476, 479–80 (1943)). A jury's verdict cannot be based on speculation and conjecture. *Garrett v. Barnes*, 961 F.2d 629, 632 (7th Cir. 1992) (citing *McClure v. Cywinski*, 686 F.2d 541, 544 (7th Cir. 1982)).

In this case, a jury would have to speculate whether plaintiff sustained any damages and what they were. There is no reasonable way to reconcile plaintiff's statements; for example, that he did not know how much profit he typically builds into jobs with his labor rate being $16.50 per hour. The only reasonable conclusion is that plaintiff himself does not know what his profit might have been and that he is speculating himself. But damages under § 187 must be nonspeculative, so the Court would direct a verdict for judgment as a matter of law in defendant's favor.

## V. Conclusion

The Court hereby **GRANTS** defendant's motion for summary judgment as to plaintiff's section 303 claim for secondary boycotting under the National Labor Relations Act, 29 U.S.C. § 187. As such, this case is hereby **DISMISSED WITH PREJUDICE**. Plaintiff's motion for summary judgment is terminated as moot (Doc. 70). Judgment to be entered for defendant.

**IT IS SO ORDERED.**

Signed this 13th day of May, 2011.

David R. Herndon
2011.05.13
23:43:54 -05'00'

**Chief Judge**
**United States District Court**